**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **CASE NO. LKG-18-cr-358** |
| **RENALDO SOLOMON HAYES,** | |
| **Defendant** | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

**INTRODUCTION**

The United States of America, by undersigned counsel, hereby respectfully submits the following response in opposition to the motion for compassionate release filed by the Defendant, Renaldo Solomon Hayes ("Defendant") (ECF No. 60).  On November 13, 2020, Defendant was sentenced to 81 months of imprisonment for violations of 18 U.S.C. § 922(g), Felon in Possession of a Firearm and Ammunition, and 21 U.S.C. § 841(a)(1), Possession with Intent to Distribute a Controlled Substance.  (*See* ECF No. 38 at 1; ECF No. 53 at 2.)  Defendant now seeks a 12-month sentence reduction citing the impact of the COVID-19 pandemic on conditions of his incarceration, ineligibility for certain First Step Act courses, and the financial burden on his family to travel to the Federal Correctional Institution, Hazelton ("FCI Hazelton") as grounds for relief.  (ECF No. 60 at 2-3.)  If the Court declines to grant a sentence reduction, Defendant otherwise requests a transfer to home confinement or to the Washington, DC Correctional Treatment Facility for the remainder of his sentence.  (*Id.*)[1]

---

[1] In his motion, (ECF No. 60 at 1), Defendant cites 18 U.S.C. § 3582(c)(2), but that section is inapplicable.  It provides for sentence reductions in certain circumstances "in the case of a

The Court should deny Defendant's motion for compassionate release. As a preliminary matter, Defendant has not submitted an initial request for relief with the Bureau of Prisons ("BOP") and thus has not exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A).[2] Even if he had exhausted his administrative remedies, the grounds Defendant cites as the basis for relief do not amount to "extraordinary and compelling reasons" warranting any reduction in his sentence. Finally, the sentencing factors set forth in 18 U.S.C. § 3553(a) require Defendant's continued detention.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 14, 2019, Defendant entered a guilty plea, pursuant to a written plea agreement, to one count of Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1), and one count of Possession with Intent to Distribute a Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D). (*See* ECF No. 38 at 1.) The first count carried a maximum imprisonment term of 10 years, up to three years of supervised release, and up to a $250,000 fine. (*Id.* at 2.) The second count carried a maximum term of five years, at least two years of supervised release, and up to a $250,000 fine. (*Id.*)

As outlined in the agreed statement of facts in support of the plea agreement, during a traffic stop on the evening of March 7, 2018, Cheverly Police Department officers found

---

defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. § 994(o)." Defendant, however, does not suggest there has been any such adjustment, and his sentence was imposed pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Nor did the government identify any basis for a reduced sentence based upon a 2023 "COVID 19 Hardship Act." (*See* ECF No. 60 at 1.) The government responds to Defendant's motion based upon the standards generally applicable to motions for compassionate release. The government respectfully reserves the option to supplement this filing if alternate bases for relief are identified.

[2] For the purpose of this opposition, the government uses the term "exhaustion" to include the scenario where the BOP does not respond within 30 days of the inmate's request for compassionate release.

Defendant with a loaded, semi-automatic handgun, a full 10-round magazine, and just under two ounces (54 grams) of marijuana.  (ECF No. 38-1 at 1.)  After noticing the strong odor of marijuana coming from the vehicle after a traffic stop, the officers asked Defendant to step out of the car.  (*Id.*)  Upon searching the vehicle, the officers discovered two clear plastic bags of marijuana hidden in a makeshift secret compartment under the vehicle's rear seat.  (*Id.*)  When the officers requested Defendant place his hands behind his back, he resisted arrest by flailing his arms, pushing the officers back, and attempting to run away.  (*Id.*)  The officers only managed to restrain Defendant after a struggle.  (*Id.*)  Upon resuming the search of the vehicle, the officers found the firearm, fully loaded, and ammunition under the passenger side of the rear bench seat—reachable from the driver's seat.  (*Id.*)  They also recovered two cell phones with text messages referring to the sale of marijuana, including a planned sale for that same evening, and approximately $1,468 in U.S. currency.  (*Id.*)  Defendant possessed the firearm and ammunition in connection with his drug trafficking crime.  (*Id.*)  When Defendant possessed the firearm and ammunition, he was prohibited from possessing any firearm or ammunition based on prior felony convictions, including two separate convictions for attempted second degree murder.  (*Id.* at 1-2.)  Moreover, Defendant was on parole in connection with at least one prior offense at the time of his arrest.  (*Id.* at 2.)

Pursuant to the plea agreement, the government dismissed an additional charge for possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c), to relieve Defendant from that charge's five-year mandatory minimum penalty.  (*See* ECF No. 45 at 2.)  The parties agreed that the career offender guidelines applied and determined that Defendant's criminal history category was a level VI under U.S.S.G. § 4B1.1(b).  (ECF No. 45 at 2.)  Following a two-level reduction for acceptance of responsibility, Defendant's adjusted offense level was 26.  (*Id.*)  According to the advisory guidelines, Defendant's suggested

sentencing range was 120 to 150 months; however, the parties agreed to a sentencing range between 60 and 84 months' imprisonment pursuant to Rule 11(c)(1)(C).  (*Id.* at 5.)

On November 13, 2020, the Court (the Honorable George J. Hazel) sentenced Defendant to a total term of 81 months' imprisonment, followed by three years of supervised release.  (ECF No. 53.)

Defendant is currently serving his sentence at FCI Hazelton (Medium) in Bruceton Mills, West Virginia.  If Defendant is found eligible for good time credit, his projected release date is April 19, 2024, and his home confinement eligibility date is October 19, 2023.  (*See* Ex. 1 (Institutional Record) (filed under seal) at 2.)  The full term of his imprisonment would run to April 18, 2025.  (*Id.*)  Defendant has currently served only less than five years of his sentence, or approximately 73%.  (*Id.* at 3)

On May 22, 2023, Defendant filed the present *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (ECF No. 60.)

On June 16, 2023, the Court ordered the government to respond to Defendant's motion by July 7, 2023.  (ECF No. 62.)

## LEGAL STANDARD

### I.    The Court's Authority To Adjudicate Motions for Compassionate Release

Under 18 U.S.C. § 3582, the district court has limited authority to modify a final sentence.  *Dillon v. United States*, 560 U.S. 817, 819 (2010) (noting that generally a court "may not modify a term of imprisonment once it has been imposed"); *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial change of heart."); *United States v. Brown*, No. RDB-16-cr-00553, 2020 WL 1479129, at *1 (D. Md. Mar. 26, 2020) (recognizing a court "may not modify the sentence imposed in this case unless certain limited circumstances arise or as permitted under Rule 35 of the Federal

Rules of Criminal Procedure and 18 U.S.C. § 3582(c)").  The compassionate release provision, 18 U.S.C. § 3582(c)(1)(A)(i), provides one exception to this rule by permitting courts to reduce a sentence if "extraordinary and compelling reasons warrant such a reduction."  *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Herndon*, No. ELH-19-268, 2023 WL 3645538, at *3 (D. Md. May 25, 2023).

As amended by the First Step Act of 2018, Section 3582(c) allows inmates to directly petition the district court for compassionate release so long as they first exhaust administrative remedies.  18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Jenkins*, 22 F.4th 162, 169 (4th Cir. 2021).  In *Muhammad*, the Fourth Circuit joined its sister circuits in finding that Section 3528(c)(1)(A)'s exhaustion requirement is a non-jurisdictional claim-processing rule.  *United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021).  As such, the exhaustion requirement may be waived or forfeited if the government fails to raise a timely objection.  *Id.* at 129.  Additionally, the Fourth Circuit clarified that the statute outlines two alternative paths for satisfying its exhaustion framework.  *Id.* at 130-31.  First, an inmate must ask the BOP to file a compassionate release motion on his behalf, and then, either "appeal the BOP's failure to bring the motion" or allow "30 days to lapse from the receipt of such a request by the warden of defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Since the outbreak of COVID-19, federal courts have overwhelmingly maintained that exhausting administrative remedies remains mandatory before the Court may consider a compassionate release request.  *United States v. McCoy*, 981 F.3d 271,  276 (4th Cir. 2020) (noting that defendants may file sentence modification motions on their own behalf, "so long as they first apply to the BOP"); *United States v. Craig*, No. ELH-18-0450, 2022 WL 1522176, at *15 (D. Md. May 13, 2022) (holding that a defendant must first petition the BOP before filing each compassionate release motion); *United States v. Johnson*, No. RDB-09-0272, 2020 WL

3791976, at *1 (D. Md. July 7, 2020) (finding a motion was premature when the defendant failed to show he submitted a request to the BOP for release); *United States v. Taylor*, No. ELH-13-0269, 2020 WL 3447761, at *6 (D. Md. June 23, 2020) (same).  *See also Untied States v. Raia*, 954 F.3d 594, 596-97 (3d Cir. 2020) (finding that failure to satisfy the exhaustion requirement under Section 3582 "presents a glaring roadblock foreclosing compassionate release"); *United States v. Fuller*, 467 F. Supp. 3d 1089, 1090 (D. Colo. 2020) (denying request for compassionate release when the BOP had not yet responded to the defendant's request and the defendant failed to wait 30 days after submitting the request to the warden).

Additionally, courts are not the appropriate forum to adjudicate Defendant's request to transfer the location of his imprisonment.  18 U.S.C. §§ 3621(b), 3624(c).  Under Section 3624(c), the BOP retains the authority to convert the remainder of an inmate's sentence to home confinement.  *United States v. Brown*, No. RDB-16-cr-00553, 2020 WL 1479129, at *1 (D. Md. Mar. 26, 2020) ("It is inherently the authority of the Bureau of Prisons to transfer an inmate to home confinement."); *United States v. Johnson*, No. JKB-14-0356, 2020 WL 1929459, at *1 (D. Md. Apr. 21, 2020) (holding that Section 3624(c) specifically grants the BOP this authority and not the courts).  Although Congress expanded the BOP's authority to transfer inmates to home confinement under the CARES Act, that discretion is still reserved to the BOP.  *United States v. Lee*, No. 22-CR-6031-FPG, 2023 WL 3017279, at *3 (W.D.N.Y. Apr. 20, 2023) (noting that courts have consistently denied requests for home confinement because they lack the authority to order such transfers).  Likewise, 18 U.S.C. § 3621(b) grants the BOP authority to designate the facility of an inmate's imprisonment.  As such, Defendant must seek relief from the BOP through the administrative remedy process to modify his place of imprisonment.

II.    **Grounds for Compassionate Release**

After exhaustion of administrative remedies, the statute establishes a two-step inquiry.

First, the Court must determine if an inmate is eligible for a sentence reduction that is:

(A) warranted by "extraordinary and compelling reasons;" and (B) consistent with applicable

Sentencing Commission policy statements.[3]  Second, if the Court finds an inmate is eligible for

compassionate release, it must then consider whether a sentence reduction is warranted

according to the factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A); *see*

*also Dillon*, 560 U.S. at 826-27 (holding that parallel language in Section 3582(c)(2) establishes

a similar two-step inquiry).

Because Section 3582(c)(1)(A) permits a sentencing reduction only to the extent that

such a reduction is "consistent with the applicable policy statements issued by the Sentencing

Commission," the pertinent policy statement, found at U.S.S.G. § 1B1.13, should be considered.

18 U.S.C. § 3582(c)(1)(A); *accord Dillon*, 560 U.S. at 826-30.

The government recognizes that in *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020),

the Fourth Circuit held that there is no "applicable" policy statement governing compassionate-

release motions filed by defendants under Section 3582(c)(1)(A), as modified by the First Step

Act.  *Id.* at 284.  Accordingly, district courts "are 'empowered . . . to consider *any* extraordinary

and compelling reason for release that a defendant might raise.'"  *Id*. (quoting *United States v.*

*Zullo*, 976 F.3d 228, 230 (2d Cir. 2020) (emphasis in original)).  The Fourth Circuit also held

that the catch-all category at Application Note 1(D) is not limited to other reasons identified by

---

[3] Certain inmates at least 70 years old are eligible for sentence reductions absent the above showing, *see* 18 U.S.C. § 3582(c)(1)(A)(ii), but that provision does not apply in this case.

the BOP.  *See id.* at 283.[4]

Nevertheless, the burden is on the defendant to demonstrate that he has exhausted administrative remedies and that there are extraordinary and compelling reasons to reduce his sentence.  *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Horton*, No. ELH-19-115, 2023 WL 3390910, at *8 (D. Md. May 10, 2023) (citing *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) and *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020)).  Even for inmates who are statutorily eligible for a reduced sentence, compassionate release is a "rare" and "extraordinary" remedy.  *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, No. 3:06-cr-151-FDW, 2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020).[5]  And even when technically permitted, a grant of relief is still wholly discretionary.  18 U.S.C. § 3582(c)(1)(A) (providing only that the court "may" reduce a defendant's sentence).

As is relevant here, U.S.S.G. § 1B1.13, entitled "Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)," provides that upon a motion of the BOP Director, the Court "may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3583(a), to the extent they are applicable, the [C]ourt determines that," as relevant here:  (1) "extraordinary and compelling reasons warrant the reduction;" (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and" (3) the reduction is

---

[4] The government does not concede that *McCoy* was decided correctly, and thus notes its objections for purposes of any subsequent appeal in this case or others.

[5] To the extent an inmate simply asks the Court to modify the location of his sentence, as mentioned above, that determination lies solely with the BOP.  18 U.S.C. §§ 3621(b) and 3624(c) (precluding judicial review of BOP placement decisions).

"consistent with this policy statement."  U.S.S.G. § 1B1.13.

Application Note 1 to U.S.S.G. § 1B1.13, in turn, defines "[e]xtraordinary and

[c]ompelling reasons" for purposes of this analysis.  The Application Note specifies that

"[p]rovided the defendant meets the requirements of subdivision (2)," which requires that the

defendant not pose a danger to any other person or to the community, extraordinary and

compelling reasons exist under any of the following circumstances:

> **(A) Medical Condition of the Defendant.—**
>> (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>> (ii) The defendant is—
>>> (I) suffering from a serious physical or medical condition,
>>> (II) suffering from a serious functional or cognitive impairment, or
>>> (III) experiencing deteriorating physical or mental health because of the aging process,
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> **(B) Age of the Defendant.—**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> **(C) Family Circumstances.—**
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> **(D) Other Reasons.—**As determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, cmt., n.1.

As Judge Hollander has concluded, quoting Judge Blake's reading of 28 U.S.C. § 994(t),

"the United States Sentencing Commission 'is responsible for defining "what should be

considered extraordinary and compelling reasons for sentence reduction" under §

3582(c)(1)(A).'" *United States v. Hiller*, No. CR ELH-18-0389, 2020 WL 2041673, at *3 (D.

Md. April 28, 2020).  Judge Blake had summarized:

> [A]ccording to the Commission's Policy Statement, 'extraordinary and
> compelling reasons' exist where (A) the defendant is suffering from a terminal or
> serious medical condition; (B) the defendant is over 65 years old, has failing
> health, and has served at least ten years or 75 percent of his sentence, whichever
> is less; (C) the caregiver of the defendant's minor child dies or becomes
> incapacitated, or the defendant's spouse or partner becomes incapacitated and the
> defendant is the only available caregiver; or (D) 'other reasons' *as determined by
> the BOP*.

*Id.* (citing *United States v. Decator*, No. CCB-95-0202, 2020 WL 1676219, at *2 (D. Md. April

6, 2020) (emphasis added); U.S.S.G. § 1B1.13 cmt. n.1(A)-(D)).  Subsection (D) "is referred to

as the 'catch-all provision.'" *Id.* (citing *Decator*, 2020 WL 1676219, at *2).[6]

And, pursuant to the mandate in Section 994(t), Application Note 3 to U.S.S.G. § 1B1.13

states: "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason

for purposes of this policy statement."

### III.    Consideration of the Section 3553(a) Sentencing Factors

If the Court determines that an inmate is eligible for a sentence reduction, the Court must

then consider whether an exercise of its discretion to reduce the inmate's sentence is warranted

according to the factors set forth in Section 3553(a).  *See Dillon*, 560 U.S. at 827;

18 U.S.C. § 3582(c)(1)(A).  Section 3553(a) provides that "[t]he court shall impose a sentence

sufficient, but not greater than necessary," to comply with the purposes described in Section

3553(a)(2), namely:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to
> provide just punishment for the offense;

---

[6]    The government understands that some Courts in this District found the policy statement
not to be binding, *see United States v. Mel*, No. TDC-18-0571, 2020 WL 2041674, at *3 (D. Md.
April 28, 2020) (Chuang, J.), but nonetheless maintains it should be considered here.  *See Dillon*,
560 U.S. at 826-30; *Hiller*, 2020 WL 2041673, at *3.

(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D).  Further, when imposing sentence, the Court shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed [to reflect the above purposes of sentencing];
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for-- . . .
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;
(5) any pertinent policy statement . . .;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1)-(7).

## ARGUMENT

### I.  Defendant Has Not Exhausted His Administrative Remedies

First, Defendant makes no showing that he exhausted his administrative remedies prior to filing the present motion as required under 18 U.S.C. § 3582(c)(1)(A), and the motion should be denied on that basis alone.  Of import here, Defendant has not alleged that he submitted an initial compassionate release request to the BOP—let alone that he appealed the warden's decision or allowed 30 days to pass after presenting his request.  (*See* ECF No. 60.)  Neither has he provided indication or evidence that he requested any such relief from the BOP before petitioning the Court.  At this time, Defendant has not made the requisite showing that he satisfied Section 3582(c)(1)(A)'s exhaustion framework.  *United States v. Ferrell*, No. ELH-14-0109, 2022 WL 1127904, at *14 (D. Md. Apr. 15, 2022) ("[T]he statute is clear that a defendant must have at the very least, directed a compassionate release request to the warden before filing such a request in court.").

- 11 -

Moreover, the Court may not excuse a defendant's failure to satisfy the exhaustion requirement when the government properly raises an objection. *United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021) (holding that Section 3582(c)(1)(A) "imposes a mandatory claim-processing rule that must be enforced when properly invoked"); *United States v. Houck*, 2 F.4th 1082, 1084 (8th Cir. 2021); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020); *United States v. Alam*, 960 F.3d 831, 834 (6th Cir. 2020). Accordingly, the Court should deny Defendant's motion as premature.

## II.    Defendant Fails to Establish Extraordinary and Compelling Reasons Warranting Compassionate Release

Even if Defendant had satisfactorily exhausted his administrative remedies, his motion should be denied because he has not demonstrated extraordinary and compelling reasons justifying a sentence reduction.

### A.  The COVID-19 Pandemic Has Abated

COVID-19 is now "a fact of life" and the threat of contracting the virus no longer provides a basis for compassionate release. *United States v. Herndon*, No. ELH-19-268, 2023 WL 3645538, at *13 (D. Md. May 25, 2023). As vaccines are readily available and medical treatments have improved, the risks that were heightened at the beginning of the pandemic are now largely under control. *United States v. Awosika*, No. ELH-17-311, 2023 WL 3122131, at *13 (D. Md. Apr. 27, 2023) (finding that "as the population gained some level of immunity from vaccinations and prior infections . . . the acute nature of the crisis has certainly abated"); *United States v. Roman*, No. 19-cr-116 (KMW), 2022 WL 17819525, at *2 (S.D.N.Y. Dec. 20, 2022) ("The threat from COVID-19 has diminished nationwide and within the BOP."). Indeed, on May 11, 2023, the federal government ended the COVID-19 national emergency, citing the virus's diminished threat across the nation. H.J. Res. 7, 118th Cong. (2023).

- 12 -

In light of these changes, an increasing number of courts—including this one—are finding that COVID-19 no longer constitutes an extraordinary and compelling reason for compassionate release—and that finding likewise applies here. *See, e.g.*, *United States v. <Arvin Gray*, No. 19-CR-00407-LKG, ECF No. 222 (D. Md. June 16, 2023) (denying a compassionate release request as moot on the grounds that "[o]n May 11, 2023, the President issued a Proclamation declaring that Covid-19 is no longer a national pandemic"); *United States v. Parker*, No. 18-CR-138 (JLS), 2023 WL 2806069, at *3 (W.D.N.Y. Apr. 5, 2023) (holding that COVID-19 provides no basis for compassionate release at this time); *United States v. Craft*, No. 02-81043 (GCS), 2023 WL 318445, at *2 (E.D. Mich. Jan. 19, 2023) (concluding that "pandemic conditions have evolved" and that such factors as risks of contracting the virus in prison, combined with serious health conditions, "no longer constitute extraordinary and compelling reasons"); *United States v. Raap*, No. 8:18-cr-00678-DCC, 2021 WL 2328048, at *2 (D.S.C. June 8, 2021) ("The overall reduction in cases may indicate that the COVID-19 pandemic no longer constitutes an exceptional and compelling reason for compassionate release even in conjunction with underlying medical conditions.").

In support of his request, Defendant alleges the pandemic imposed extreme conditions on his incarceration. (ECF No. 60 at 2.) Yet, even while the pandemic was ongoing, courts routinely declined to accept general allegations of hardship caused by COVID-19 as grounds for compassionate release. *See, e.g.*, *United States v. Butler*, No. ELH-08-381, 2023 WL 3198124, at *14 (D. Md. May 2, 2023) (finding the defendant ineligible for compassionate release when he failed to demonstrate a particular susceptibility to COVID-19, such as a qualifying medical condition); *Parker*, 2023 WL 2806069, at *3 (rejecting a claim for compassionate release based on a facility's general inability to cope with the pandemic, or because conditions at the facility were poor, as "not a basis for granting [the defendant]'s compassionate release motion," and

noting, "[n]or do generalized statements about the conditions of confinement being harsher or more punitive than expected constitute extraordinary or compelling reasons for compassionate release") (citations omitted); *United States v. Lawrence*, No. 19-CR-437 (AKH), 2022 WL 4000904, at *3 (S.D.N.Y. Sept. 1, 2022) ("The conditions universally applicable to all inmates at a given facility, including conditions instituted during the pandemic, do not give rise to extraordinary and compelling circumstances."); *United States v. Hall*, No. JKB-04-0323, 2022 WL 2105975, at *3 (D. Md. June 10, 2022) (referring to other courts' findings that "the 'harsh conditions of imprisonment occasioned by the COVID-19 pandemic are not, without more, sufficiently "extraordinary and compelling" to warrant compassionate release'""); *United States v. Harris*, No. DKC-08-319-6, 2020 WL 2512420, at *1 (D. Md. May 15, 2020) (concluding that "generalized and unspecific reasons . . . do not satisfy the standard for compassionate release"); *United States v. Williams*, No. PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) ("The coronavirus is not tantamount to a get out of jail free card.").

Instead, the pertinent policy statement treats as an "extraordinary and compelling" circumstance "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 cmt. n. 1(A)(ii)(I).  During the pandemic, the government acknowledged that an unvaccinated inmate who presented a medical risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who was not expected to recover from that condition, presented an extraordinary and compelling circumstance under that provision.  However, that circumstance no longer exists as available vaccines permit effective self-care against severe illness or death that may be caused by the coronavirus.  The CDC states the vaccines are "safe and effective" in preventing severe illness, hospitalizations, and death. *Benefits of Getting A COVID-19 Vaccine*, Ctrs. for Disease

- 14 -

Control and Prevention, https://cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (last accessed July 7, 2023).

Accordingly, once a vaccine is available to an inmate, compassionate release is not warranted based on the threat of COVID-19 alone. *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) ("A defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an extraordinary and compelling reason warranting a sentence reduction."); *United States v. Reed*, No. 18-CR-0078 (JLS), 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021) ("Now that COVID-19 vaccinations are being administered throughout the Bureau of Prisons, compassionate release motions generally lack merit.").

Furthermore, courts have consistently denied compassionate release motions for inmates who refused a COVID-19 vaccination. *United States v. Ayres*, No. SAG-04-004, 2021 WL 2352322, at *2 (D. Md. June 9, 2021) ("Courts now widely recognize that a refusal to take preventative measures to protect oneself from COVID-19 undermines any assertion that the risk of viral infection constitutes an extraordinary and compelling reason justifying release."); *United States v. Dempsey*, 567 F. Supp. 3d 284, 289 (D.D.C. 2021) (agreeing with the government that because the defendant "declined the opportunity to reduce his risk exposure to COVID-19 dramatically[,] he cannot reasonably expect that prolonging his risk by declining vaccination will be rewarded with a sentence reduction"); *United States v. Sawyers*, No. 15-00070-RSWL-1, 2021 WL 2581412, at *4 (C.D. Cal. June 22, 2021) ("The glaring consensus among district courts is that refusal of a COVID-19 vaccine subverts a defendant's compassionate release motion."); *United States v. Garcia*, No. 14-cr-20035 (MMM), 2021 WL 1499312, at *3 (C.D. Ill. Apr. 16, 2021) ("Courts across the country have consistently ruled that an inmate's refusal of a

COVID-19 vaccine weighs against a finding of extraordinary and compelling circumstance to justify relief.").

Here, Defendant fails to demonstrate that his circumstances are "extraordinary and compelling." Defendant, who is only 31 years old, does not allege that he suffers or has suffered from any health condition that could increase his risk of severe illness due to COVID-19. (*See* ECF No. 60 at 2.) Nor is there any indication that Defendant's health has deteriorated while in custody or that he is anything other than generally healthy. Without providing evidence of an elevated medical risk, Defendant's allegations of extreme hardship fall short of the "extraordinary and compelling" threshold. Notably, Defendant also refused the COVID-19 vaccination on April 7, 2021. (Ex. 2 (Medical Records) (filed under seal) at 2.) It is unreasonable to suggest that conditions imposed during the COVID-19 pandemic were especially punitive when Defendant could have reduced the risk by accepting a COVID-19 vaccine. In short, COVID-19 does not present an extraordinary and compelling reason warranting Defendant's early release.

### B.  First Step Act Programming

Defendant next contends that his rehabilitative efforts and ineligibility for good time credits warrant a sentence reduction. (ECF No. 60 at 3.) Rehabilitation efforts alone cannot be considered an extraordinary and compelling reason for compassionate release. 28 U.S.C. § 994(t); *United States v. Davis*, No. 21-6960, 2022 WL 127900, at *1 (4th Cir. 2022) (per curiam) (noting that courts can consider rehabilitation efforts and other post-conviction conduct as "one among other factors"). While it is commendable that Defendant has sought to make the most of his time incarcerated by completing recidivism-reduction programs, his efforts are not extraordinary and compelling. Courts expect inmates to complete courses, work a job, and otherwise attempt to improve themselves while incarcerated. *United States v. Logan*, 532 F.

Supp. 3d 725, 735 (D. Minn. 2021) (noting that an inmate striving for a productive institutional record only satisfies "baseline expectations," and does not mean "he has done something extraordinary;" "there is nothing 'extraordinary and compelling' about a prisoner who simply does the things that prisoners are supposed to do"); *United States v. Burale*, No. 2:11-cr-34-13 (RBS), 2022 WL 1439663, at *6-7 (E.D. Va. May 6, 2022) (finding that the defendant satisfied simply the baseline expectation by completing approximately 20 educational courses, having a job while incarcerated, completing a drug education program, and having no disciplinary infractions for six months).  Further, Defendant does not provide evidence of the impact the programming has had on him to assess whether he has rehabilitated.  *United States v. Nurani*, No. 2:11-cr-34-3 (RBS), 2023 WL 2058649, at *7 (E.D. Va. Feb. 16, 2023) ("With so little evidence of personal growth, it is impossible for the court to find that Defendant's rehabilitation efforts as presented are 'extraordinary' in any way.").

Moreover, the First Step Act provides that the BOP has the authority to evaluate an inmate's risk and needs.  18 U.S.C. § 3632(a).  Congress directed the BOP to apply the PATTERN assessment tool to determine each inmate's needs for programming.  18 U.S.C. § 3632(a)(2).  The First Step Act encourages inmates to participate in evidence-based recidivism reduction programming by offering time credits.  18 U.S.C. § 3632(d)(4)(A)(i).  However, not every inmate is eligible for FSA earned time credits.  *Komodo v. Luna*, No. 22-cv-425-SE, 2023 WL 310580, at *4 (D.N.H. Jan. 13, 2023) (noting that the statute "maintains multiple eligibility requirements, including an extensive list of convictions that render a prisoner ineligible to earn time credits").  The statute limits the application of FSA credits to only pre-release custody or supervised release, 18 U.S.C. § 3632(d)(4)(C), and the BOP has the sole authority to calculate and apply sentence credits, *id.*; *see also United States v. Delgado*, 614 F. Supp. 3d 546, 551 (E.D. Mich. 2022) (holding that courts lack jurisdiction to grant time credits).  As such, the Court

cannot grant Defendant the relief he seeks.  *United States v. Smith*, No. 1:17-cr-20753 (TLL), 2022 WL 17718413, at *4 (E.D. Mich. Dec. 15, 2022) (finding that the inability to apply time credits to a term of imprisonment is not extraordinary or compelling and the defendant could instead challenge the computation of his credits under 18 U.S.C. § 2241 if they were not applied to his supervised release term).

## C.  Family Circumstances

Finally, Defendant contends that the travel expenses his family incurs to visit him at FCI Hazelton presents an extraordinary and compelling reason warranting release.  (ECF No. 60 at 3.)  As mentioned above, while the compassionate release statute does not define what constitutes "extraordinary and compelling reasons," Congress directed the Sentencing Commission to describe what "should be considered extraordinary and compelling reasons" for compassionate release.  28 U.S.C. § 944(t).  The Sentencing Commission's policy statement considers "extraordinary and compelling reasons" based on the medical condition of the defendant, age of the defendant, specific family circumstances, and other enumerated reasons. U.S.S.G. § 1B1.13 cmt. n.1(A)-(D).  Under the family circumstances category, release is justified only in two limited circumstances:  either (1) "the death or incapacitation of the caregiver of the defendant's minor child or minor children;" or (2) "the incapacitation of defendant's spouse . . . when the defendant would be the only available caregiver for [that spouse]." U.S.S.G. § 1B1.13 cmt. n.1(C).  Here, Defendant's family circumstances do not fall within either of these two categories.

Nor does hardship levied on family members due to a defendant's incarceration status otherwise meet the extraordinary and compelling standard.  *See, e.g.*, *United States v. John*, No. 15-CR-208 (CM), 2020 WL 6581217, at *2 (S.D.N.Y. Nov. 10, 2020) (noting that despite the court's discretion, "§ 3582(c)(1)(A)(i) still only authorizes release where family circumstances

are truly 'extraordinary and compelling,' and not merely the inevitable circumstances families face when a family member is incarcerated"); *United States v. Pilgrim*, No. 3:19-cr-50-01 (REP), 2021 WL 2003548, at *3 (E.D. Va. May 19, 2021) ("[T]he Court is confronted on a regular basis with the fact that defendants who are incarcerated are separated from their families . . . .  For that reason, those circumstances simply cannot be considered as extraordinary."); *United States v. Francisco-Ovalle*, No. 18-cr-526 (AJN), 2021 WL 123366, at *5 (S.D.N.Y. Jan. 13, 2021) (holding that a defendant's desire to support his family applies broadly to incarcerated individuals and does not provide an extraordinary and compelling reason for release); *United States v. Pena*, No. 09-CR-341 (VM), 2020 WL 7408992, at *7 (S.D.N.Y. Dec. 17, 2020) (noting that although admirable, a defendant's concern for his family's wellbeing does not warrant compassionate release); *United States v. Johnson*, No. RDB-09-0272, 2020 WL 3791976, at *2 (D. Md. July 7, 2020) (same).  In sum, Defendant has not established that extraordinary family circumstances warrant the relief he seeks.

### III.    The Factors Set Forth in 18 U.S.C. § 3553(a) Further Support a Denial of the Requested Relief

Even if the Court were to find that Defendant exhausted his administrative remedies and that extraordinary and compelling circumstances exist here, the Court must still consider the sentencing factors in 18 U.S.C. § 3553(a); *Dillon*, 650 U.S. at 826-30 (holding that parallel language in Section 3582(c)(2) established a similar two-step inquiry); *Chambliss*, 948 F.3d at 693-94.  Under the applicable policy statement, the Court should deny a sentence reduction unless it determines that the defendant "is not a danger to the safety of any other person or to the community."  U.S.S.G. § 1B1.13(2).

Here, the nature and circumstances of Defendant's offenses and criminal history weigh heavily against early release.  As noted above, Defendant was responsible for the transportation

and distribution of a large quantity of marijuana and he possessed a loaded firearm in connection

with his drug trafficking.  The need for deterrence would not be served if relief were granted.

Defendant served a prior sentence for two very serious offenses of attempted murder.  However,

that sentence was not sufficient to deter him from engaging in criminal conduct even while he

was released on parole.  Despite his prior felonies, Defendant acquired and possessed a firearm

to use in connection with his drug trafficking.  The fact that Defendant was on parole for

attempted murder when he was arrested for the present charges demonstrates the substantial need

for deterrence that the sentence in this case was designed to satisfy.  Other previous convictions

included first degree assault, use of handgun in commission of a crime of violence (in connection

with one of the attempted murders), and attempted robbery.  (ECF No. 50 at 7.)  Defendant

fought police to try to avoid being taken into custody in this case.  He also has been subject to

discipline while incarcerated, having possessed an unauthorized item in 2021.  (Ex. 3 (Inmate

Discipline Data) (filed under seal).)  Just as the previous sentence did not disrupt Defendant's

activities, granting release now would fail to serve the proper deterrent effect that service of the

originally-imposed 81-month sentence will.

Moreover, Defendant is already the beneficiary of a reduced sentence pursuant to the

conditions of his plea agreement.  (*See* ECF No. 38 at 2.)  As noted in the government's

sentencing memorandum, Defendant's advisory Guidelines sentencing range was 120-150

months.  (ECF No. 45 at 2.)  However, the parties agreed to a sentencing range of no less than 60

months and no greater than 84 months pursuant to Rule 11(c)(1)(C), with the government

ultimately recommending 84 months of imprisonment to the Court.  (*Id.*)  At sentencing, Judge

Hazel sentenced Defendant to 81 months of imprisonment.  (ECF No. 53.)  Further reducing

Defendant's sentence would minimize the seriousness of his offense.

In addition, as Defendant himself points out, his PATTERN recidivism score is a Medium.  (ECF No. 60 at 2.)  Despite his participation in FSA programming, the BOP has determined that Defendant's potential for recidivism remains considerable.  Other courts have concluded that a defendant still presents a danger to the community even when the defendant only has a Low PATTERN score.  *United States v. Mackenzie*, 458 F. Supp. 3d 53, 56 (D. Mass. 2020) (considering the defendant's Low PATTERN risk score (and lack of any disciplinary infractions while incarcerated, *e.g.*), but finding that he still posed a danger, based on his criminal history and the nature of his crime).  Additionally, Defendant provides no details regarding any release plan or a plan for future employment.  Given Defendant's history, including his conduct underlying this case and his prior convictions (because of which he is classified as a career offender, *see* ECF No. 50 at 6-7, 9), he still presents a danger to the community.

The factors set forth in Section 3553(a), like policy statement U.S.S.G. § 1B1.13, weigh against granting compassionate release.  Therefore, this Court should decline to reduce Defendant's sentence, as he has requested.  Even if he were otherwise eligible for relief, which he is not, Defendant's motion should be denied after consideration of the factors set forth in 18 U.S.C. § 3553(a).

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that this Honorable

Court deny Defendant's motion for compassionate release.

Respectfully submitted.

Erek L. Barron
United States Attorney

_____/s/_____
Elizabeth Wright
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 7, 2023, I filed an electronic copy of this response via the

Court's CM/ECF system.  I am also causing a hard copy to be mailed First Class Mail, postage

pre-paid, no later than the following business day, to:

Renaldo Solomon Hayes (64157-037)
FCI Hazelton
P.O. Box 5000
Bruceton Mills, WV 26525

_____/s/_____
Elizabeth Wright
Assistant United States Attorney
